# IN THE SUPREME COURT OF TEXAS

═══════════
No. 09-1010
═══════════

FPL FARMING LTD.,
PETITIONER,

v.

ENVIRONMENTAL PROCESSING SYSTEMS, L.C.,
RESPONDENT

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE COURT OF APPEALS
FOR THE NINTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════

**Argued March 1, 2011**

JUSTICE WAINWRIGHT delivered the opinion of the Court.

In this case we consider whether a regulatory permit to drill an injection well absolves the holder from civil tort liability for conduct authorized by the permit. Environmental Processing Systems, L.C. (EPS) obtained permits from the Texas Natural Resource Conservation Commission (now the Texas Commission on Environmental Quality) to construct and operate two deep wastewater injection wells on a tract next to land FPL Farming Ltd. (FPL) owns in Liberty County. FPL sued EPS for, among other things, tort damages for physical trespass based on alleged subsurface migration of water injected in the permitted well. Specifically, FPL alleged that the injected wastewater likely migrated onto its property and contaminated its water supply. After the jury failed to find a trespass, FPL appealed. Among other issues, FPL contended that it was entitled

to a directed verdict on a consent defense, the allocation of the burden of proof in the jury charge was erroneous, and factually sufficient evidence supported its trespass claim. The court of appeals did not address the merits of the trespass claim or the jury charge but held FPL could not recover in tort for trespass damages because the wells were authorized by the permit EPS secured from the Texas Commission on Environmental Quality (TCEQ). The Injection Well Act provides that holders of wastewater injection well permits issued by the TCEQ are not immune from civil liability and our previous case law has not held that such permit holders are immune from tort liability. We therefore reverse the judgment of the court of appeals and remand for consideration of issues related to the trespass claim.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

FPL owns two tracts of land in Liberty County used primarily for rice farming. It owns all of the surface and subsurface rights to its two parcels, except for the mineral rights. EPS operates a wastewater injection well on land adjoining one of FPL's tracts. EPS obtained a permit to drill and operate the well from TCEQ's predecessor agency, Texas Natural Resource Conservation Commission (TNRCC), in 1996.[2] The wastewater injection wells are "non-hazardous,"[3] but are used to inject wastewater-containing substances such as acetone and

---

[1] No rendition issues were raised in this Court.

[2] TNRCC's name was changed to TCEQ as part of the agency's 2001 sunset review, effective January 1, 2004. *See* Act of April 20, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985. The agency began doing business as the TCEQ on September 1, 2002. Texas Commission on Environmental Quality, "TNRCC is Now the TCEQ," http://www.txeq.texas.gov/about/name_change.html (all Internet materials as visited August 19, 2011 and available in clerk of Court's file).

[3] Non-hazardous waste streams are those not specifically designated as "hazardous." Texas' Solid Waste Disposal Act classifies hazardous wastes as those wastes identified or listed by the administrator of the United States Environmental Protection Agency. TEX. HEALTH & SAFETY CODE § 361.003(12) (incorporating the waste-classification

2

naphthalene into salt water approximately a mile and a half below the surface, below any drinking water, which is commonly found at a few hundred feet. Although FPL originally requested a contested case hearing to object to the issuance of the permits, FPL and EPS reached a settlement agreement in September 1996, with EPS paying FPL $185,000 to avoid the delay and the expense of a hearing, and the permits were issued two days later.

Three years later, EPS sought to amend the permits to increase the allowed injection rate, and FPL once again requested a contested case hearing. After the hearing, the presiding administrative law judge recommended that the agency grant the amendments, finding that the waste plume would radiate 3,021 feet from the well facility after ten years (a plume that would naturally extend into FPL's subsurface land) and concluding that FPL had no right to exclude others from the deep subsurface; FPL's rights would not be impaired by the amended permits; and that operation of the wells would not amount to an unconstitutional taking. The TCEQ approved the permits. FPL appealed to the district court, which affirmed the agency's decision, and then to the Austin Court of Appeals, which also affirmed. *FPL Farming, Ltd. v. Tex. Nat. Res. Comm'n*, 2003 WL 247183, at *1–2 (Tex. App.—Austin 2003, no pet.). The Austin Court of Appeals assumed without deciding that FPL had property rights in the subsurface land and would have standing to sue for damages if the wastewater migrated into FPL's land. *Id.* at *3, 5.

FPL filed suit against EPS in Liberty County in 2006, alleging various causes of action, including trespass, negligence, and unjust enrichment, and requesting a permanent injunction and

scheme of the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. § 6901 et seq.).

damages. The jury found for EPS, failing to find that a trespass had occurred, and the judge entered a take-nothing judgment against FPL. The trial court denied FPL's motion for new trial. FPL appealed, arguing that the trial court should have granted FPL a directed verdict on the consent defense to the trespass claim; the jury charge erroneously shifted the burden of proof on consent to FPL; the jury instruction erroneously failed to instruct the jury that injury is not a required element of trespass; and the jury's findings were against the great weight and preponderance of the evidence on the trespass, negligence, and unjust enrichment claims. The Beaumont Court of Appeals overruled FPL's factual-sufficiency contention. 305 S.W.3d 739, 746. Rather than addressing the jury charge and other trespass issues, the court of appeals considered as a threshold matter whether FPL may pursue a trespass claim when the TCEQ approved an amended permit allowing EPS to inject the wastewater and "the information before the Commission showed that EPS's waste plume was projected to migrate into the deep subsurface of the formation underlying FPL's property." *Id.* at 742. In other words, the court of appeals considered whether EPS was shielded from civil tort liability merely because it received a permit to operate its deep subsurface wastewater injection well. The court of appeals concluded that EPS was shielded, reasoning: ". . . [W]hen a state agency authorized deep subsurface injections, no trespass occurs when fluids that were injected at deep levels are then alleged to have later migrated at those deep levels into the deep subsurface of nearby tracts." *Id.* at 744–45. It therefore affirmed the trial court's judgment. We granted the petition for review. 54 Tex. Sup. Ct. J. 538.[4]

## II. JURISDICTION AND STANDARD OF REVIEW

---

[4] The Underground Injection Technology Council submitted a brief of amicus curiae in support of EPS.

4

This Court has jurisdiction under Texas Government Code section 22.001(a)(2) and (3). The issue in this case concerns the interpretation of Texas Water Code and Texas Administrative Code provisions. TEX. WATER CODE § 27.104; 30 TEX. ADMIN. CODE § 305.122(c). We review issues of statutory construction de novo. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Additionally, there is a current conflict among Texas courts of appeals over whether state-issued permits immunize the permit holder from civil liability. *Compare FPL Farming, Ltd. v. Tex. Natural Res. Conservation Comm'n*, 2003 WL 247183 at *5, *Berkley v. R.R. Comm'n of Tex.*, 282 S.W.3d 240, 243 (Tex. App.—Amarillo 2009), *with FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 305 S.W.3d at 744–45.

The Austin Court of Appeals upheld the agency's grant of amendments to EPS' permits in 2003. *FPL Farming, Ltd. v. Tex. Nat. Res. Conservation Comm'n*, 2003 WL 247183 at *1–2. In so doing, the Austin Court of Appeals assumed without deciding that FPL had existing rights to the subsurface of its land, but held that the amended permits did not impair FPL's rights. *Id.* at *3–4. The court held that the TCEQ had acted within its statutory authority in approving the amendments; FPL had failed to produce evidence of possible uses of the subsurface that would be impacted in the future by the injections; and had not refuted EPS' evidence that the injections would adversely affect FPL's existing rights. *Id.* at *4–5. The court also held that FPL failed to prove a permanent physical occupation and thus its unconstitutional taking claim failed. *Id.* at *5. However, the court stated that "should the waste plume migrate to the subsurface of FPL Farming's property and cause harm, FPL Farming may seek damages from EPS." *Id.* The Amarillo Court of Appeals applied that

5

reasoning to a permit issued by the Railroad Commission in *Berkley*, holding that "securing a permit does not immunize the recipient from the consequences of its actions if those actions affect the rights of third parties." 282 S.W.3d at 243 (relying on *FPL Farming, Ltd. v. Tex. Nat. Res. Conservation Comm'n*, 2003 WL 247183). The *Berkley* court compared agency permits to drivers' licenses; a driver's license permits the driver to drive legally, but not on his neighbor's lawn. *Id.*

The court of appeals opinion we consider today conflicts with those opinions. FPL followed the Austin Court of Appeals in the aforementioned *FPL Farming, L.P. v. Texas Natural Resource Conservation Commission* and filed suit in tort against EPS once FPL concluded the waste plume had entered or was about to enter the subsurface of its property. 305 S.W.3d at 741. The jury found for EPS on all of FPL's claims and FPL appealed, alleging several errors related to the trespass claim as well as lack of evidence supporting the jury's verdict. The court of appeals concluded that, "under the common law, when a state agency has authorized deep subsurface injections, no trespass occurs when fluids that were injected at deep levels are then alleged to have later migrated at those deep levels into the deep subsurface of nearby tracts." *Id.* at 744–45. Thus, under the court of appeals' opinion, a permit holder would be immunized from trespass liability by virtue of receiving a permit. As the court of appeals determined there could be no actionable trespass, it overruled FPL's issues concerning trespass.

## III. TCEQ PERMITS AND CIVIL LIABILITY

The crux of the court of appeals' holding, determined "as an initial matter" before deciding FPL's jury charge, directed verdict, and evidence points on FPL's trespass tort claim, is that FPL had no common law cause of action for trespass because the TCEQ approved "an amended permit

6

allowing EPS to inject wastewater into the Frio formation and when information before the Commission showed that EPS's waste plume was projected to migrate into the deep subsurface of the formation underlying FPL's property." *Id.* at 742. The court of appeals' reasoning is inconsistent with our general view of the legal effect of an agency's permitting process, the specific statute authorizing the TCEQ's process in this case, and our precedent regarding court review of agency actions.

As a general rule, a permit granted by an agency does not act to immunize the permit holder from civil tort liability from private parties for actions arising out of the use of the permit. This is because a permit is a "negative pronouncement" that "grants no affirmative rights to the permittee." *Magnolia Petroleum Co. v. R.R. Comm'n*, 170 S.W.2d 189, 191 (1943). A permit removes the government imposed barrier to the particular activity requiring a permit. As the Amarillo Court of Appeals aptly stated: "[O]btaining a permit simply means that the government's concerns and interests, at the time, have been addressed; so, it, as a regulatory body, will not stop the applicant from proceeding under the conditions imposed, if any." *Berkley*, 282 S.W.3d at 243. Similarly, when the Board of Law Examiners grants an attorney a license to practice law in this state, even after undertaking a significant background check on the candidate's character and fitness to practice, the license does not preclude a private party from seeking damages for the attorney's malpractice. *See* Tex. R. Govern. Bar Adm'n IV, X. When the Austin health authority issues a permit after inspection for a person to operate a restaurant, and a patron gets sick from eating at the restaurant, the fact that the restaurant was licensed (and may have been in compliance with health regulations)

7

does not, in and of itself, preclude the ill patron from recovering in a negligence action against the restaurant. *See* Austin City Code § 10-3-61.

An example of this situation arose in *Magnolia Petroleum*, 170 S.W.2d 189. A person applied for a permit to drill an oil well, which was opposed before the Railroad Commission on the grounds that another entity, Magnolia Petroleum, actually had title to the land at issue in the permit. The Railroad Commission granted the permit, and Magnolia filed a district court action challenging the permit, introducing its chain of title and arguing that because it had proved superior title, the permit should not have been granted. *Id.* at 190. The trial court cancelled the permit and the court of appeals reversed, but suspended the permit, remanding with instructions to suspend the suit for a separate lawsuit in which title was being determined. We reversed because, even though the Railroad Commission could consider whether an applicant "appears" to have title, the mere fact that the applicant received the permit did not provide the applicant with any authority to drill on land that was not his, or shield him from tort liability or an injunction action should it be determined that he is not the rightful owner of the parcel. *Id.* at 190–91. We noted that, if the permit were granted,

> the permittee may still have no such title as will authorize him to drill on the land. . . . In short, . . . [the permit] merely removes the conservation laws and regulations as a bar to drilling the well, and leaves the permittee to his rights at common law. Where there is a dispute as to those rights, it must be settled in court. The permit may thus be perfectly valid, so far as the conservation laws are concerned, and yet the permittee's right to drill under it may depend upon his establishing title in a suit at law.

*Id.* at 191. While we noted that the Railroad Commission "should not do the useless thing of granting a permit to one who does not claim the property in good faith," the Railroad Commission's

8

determination of the propriety of the permit has no effect on the propriety of the permittee's potentially tortious actions. *Id.*

Of course, statutory remedies may preempt common law actions or other standards that may set the bar for liability in tort, but a permit is not a get out of tort free card. *Cf. MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 494, 499 (Tex. 2010) (holding the federal motor vehicle safety standards do not preempt jury findings that a bus manufacturer's buses were defectively designed). But in this case, the statute authorizing the TCEQ to provide EPS the permit is consonant with the general rule, rather than the exception.

The Injection Well Act (the Act), Chapter 27 of the Texas Water Code, governs the drilling and use of deep subsurface injection wells such as the one at issue in this case. TEX. WATER CODE §§ 27.001–27.105. The Act's policy and purpose is to "maintain the quality of fresh water in the state to the extent consistent with the public health and welfare and the operation of existing industries, taking into consideration the economic development of the state, to prevent underground injection that may pollute fresh water, and to require the use of all reasonable methods to implement this policy." *Id.* § 27.003. Absent from this policy determination is any intent, if permissible, to authorize an agency to determine ownership of the deep subsurface or determine whether authorized migration invades private property rights. The Act states that no person may drill, use, continue using, or convert a well into an injection well without first obtaining a permit from the TCEQ, unless the well comes under the jurisdiction of the Railroad Commission. *Id.* § 27.011. Chapter 27 lays out a method for applying for permits; lists general considerations the TCEQ may review in determining whether to grant a permit; provides the TCEQ with rule making authority as required

9

for the performance of its duties; and establishes administrative, civil, and criminal penalties for disobedience. *Id.* §§ 27.012, 27.016, 27.018-19, 27.101-03, 27.105, 27.1012, 27.1013, 27.1014.[5]

The Act does not preempt any civil actions. In fact, the text states just the opposite. Section 27.104 of the Act provides that "[t]he fact that a person has a permit issued under this chapter does not relieve him from any civil liability." *Id*. § 27.104.

When construing statutes, we first look to the language used by the Legislature, which is the best indication of the Legislature's intent. *Carreras v. Marroquin*, 339 S.W.3d 68, 71 (Tex. 2011) (citing *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003)). The "plain and common meaning of the statute's words" directly contradicts the court of appeals' holding in this case. *See State ex. rel. State Dept. of Highways and Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). The statute does not deny FPL a cause of action for trespass merely because the injection well owner had obtained a TCEQ permit. The court of appeals cited section 27.104 early in its opinion, but neglected to consider it in the determination that a permit could eradicate a trespass claim against a permit holder. *FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 305 S.W.3d at 742 n.2.

In addition, the section of the Texas Administrative Code governing TCEQ permits is in discord with the court of appeals' opinion. Section 305.122(c) states that:

> The issuance of a permit does not authorize any injury to persons or property or an invasion of other property rights, or any infringement of state or local law or regulations.

---

[5] The Act creates a similar structure for injection wells that are under the jurisdiction of the Railroad Commission. *See id.* subch. C.

10

30 TEX. ADMIN. CODE § 305.122(c). The holding of the court of appeals conflicts with the clear language of this provision. The statute specifically states that a permit does not authorize invasion of property rights, which is where the tort of trespass falls. The situation is analogous to the licensing of lawyers, regulation of restaurants, or the drilling of oil wells in *Magnolia Petroleum.* EPS may have permission from the TCEQ to inject authorized wastewater, but the consequences of acting under the permit have not been immunized.[6]

Instead of relying on the basic rule and the text of the Injection Water Act, the court of appeals based its ruling on two of this Court's opinions, *Manziel* and *Garza*. In *Manziel* we addressed a permit granted by the Railroad Commission to inject water to flood a reservoir and recover oil. *R.R. Comm'n of Tex. v. Manziel*, 361 S.W.2d 560, 562 (Tex. 1962). The Manziels sought to set aside and cancel the permit issued by the Railroad Commission to the Whelans, who owned land adjoining the Manziels' tract, arguing that the injected water would constitute a trespass and would result in destruction of their own well. *Id.* at 561, 565. In the case before us, the court of appeals interpreted the holding of *Manziel* to provide that "a secondary recovery operation involving the subsurface injection of salt water did not cause a trespass when the water migrated across property lines, in light of the Railroad Commission's approval of the operation," which led to the court's conclusion that when a state agency authorizes injections, no trespass could occur

---

[6] FPL argued before this Court that should a government permit immunize a permit holder from trespass liability, the Injection Well Act would become a condemnation statute and the subsurface migration would be a government taking. Because we determine that a permit holder is not shielded from liability because he or she holds a permit, we do not reach FPL's constitutional concern.

11

when the injected substance migrates across property lines underground. *FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 305 S.W.3d at 743–44.

The court of appeals misinterpreted this Court's holding in *Manziel.* We stated there that we were "not confronted with the tort aspects" of subsurface injected water migration, nor did we decide "whether the [Railroad] Commission's authorization of such operations throws a protective cloak around the injecting operator who might otherwise be subjected to the risks of liability . . .." *Manziel*, 361 S.W.2d at 566. Instead, we held that Railroad Commission authorizations of secondary recovery projects are not subject to injunctive relief based on trespass claims. *Id.* at 568. Consistent with our suggestion in *Magnolia Petroleum* that the Railroad Commission has the authority and obligation to look to the parties' legal status in determining whether a permit should be issued, we noted that "[t]he technical rules of trespass have no place in the consideration of the validity of the orders of the [Railroad] Commission." *Id.* at 569-70. We made the point in *Manziel* that we were not deciding whether a permit holder is immunized from trespass liability by virtue of the permit. *Id.* at 566. The case is inapposite.

Our opinion in *Garza*, another opinion relied upon by the court of appeals, likewise did not hold that agency authorization or permission resulted in blanket immunity from trespass liability. *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 4 (Tex. 2008). Although *Garza* dealt with a subsurface trespass issue, it also was a different case than the one before us. In *Garza*, the Salinases, mineral owners of one tract, sued Coastal Oil & Gas Corporation, the entity leasing their mineral interest and the mineral interest in an adjoining tract, for trespass based on the underground

12

invasion of the Salinases' reservoir by injected proppant[7] used by Coastal Oil in fracturing[8] to recover minerals from the adjoining tract that it also leased. *Id.* at 6-7. Because the Salinases were mineral owners and had leased the minerals to Coastal Oil, they merely had a royalty interest and possibility of reverter but did not possess the minerals. *Id.* at 9. Although the Salinases had standing to sue for a form of trespass, we held that, because they were not in possession of the mineral rights, they were not entitled to sue for trespass based on nominal damages but had to prove actual injury. *Id.* at 10–11. We held that the rule of capture precluded damages for drainage by fracturing, and thus the Salinases could not recover. *Id.* at 17.

The issues in *Manziel* and *Garza* were factually similar. They dealt with injected substances per agency authorization that had possibly migrated underground across property lines. The case before us is distinguishable on several grounds. Both of those cases dealt with the extraction of minerals in the oil and gas industry, and thus the rule of capture. *Garza*, 268 S.W.3d at 13, *Manziel*, 361 S.W.2d at 568. The rule of capture, and administrative deference to agency interpretations, was critical to our holding in *Garza*. And although the Act contains provisions governing both Railroad Commission and TCEQ permits, injecting substances to aid in the extraction of minerals serves a different purpose than does injecting wastewater. TEX. WATER CODE § 27.011. We have recognized that "[i]t cannot be disputed that [secondary operations to recover oil and gas] should be encouraged" to "increase the ultimate recovery of oil and gas." *Manziel*, 361 S.W.2d at 568. Under

---

[7] Proppants are defined as "[s]mall granules contained in a slurry mix injected as a part of a hydraulic fracturing operation . . .." 8 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law, Manual of Terms* 836 (Patrick H. Martin & Bruce M. Kramer eds., 2010).

[8] Hydraulic fracturing or "fracturing" is a method which "employs hydraulic pressure to fracture . . . rock," thereby "increasing the permeability of rock, and thus increasing the amount of oil or gas produced from it." *Id.* at 479.

13

the rule of capture, a "cornerstone of the oil and gas industry . . . fundamental both to property rights and to state regulation," a mineral rights owner owns the oil and gas produced from his or her well even if the oil and gas migrated underground from a tract owned by someone else. *Garza*, 268 S.W.3d at 13. *Manziel* and *Garza* considered the justification for the rule of capture — greater oil and gas recovery — in their analyses. However, the rule of capture is not applicable to wastewater injection. *Id.* at 17; *see also Manziel*, 361 S.W.2d at 568. Mineral owners can protect their interests from drainage through means such as pooling or drilling their own wells. *Garza*, 268 S.W.3d at 14. That is not necessarily the case when a landowner is trying to protect his or her subsurface from migrating wastewater. *Manziel* and *Garza* did not decide the issues in this case, and because of the oil and gas interests at issue in *Manziel* and *Garza*, their reasoning does not dictate our analysis in this wastewater injection trespass case.

## IV. CONCLUSION

The language of the Injection Well Act and the portions of the Texas Administrative Code governing the TCEQ do not shield permit holders from civil tort liability that may result from actions governed by the permit. This is consistent with our common law rule that the mere fact that an administrative agency issues a permit to undertake an activity does not shield the permittee from third party tort liability stemming from consequences of the permitted activity. Accordingly, the court of appeals erred in determining that because the TCEQ permitted EPS' injection wells, there was no trespass. We do not decide today whether subsurface wastewater migration can constitute a trespass, or whether it did so in this case. We remand to the court of appeals for determination of the issues originally presented by FPL at the court of appeals, including whether FPL was entitled

14

to a directed verdict on the issue of its consent, whether the burden of proof on consent was erroneously shifted to FPL in the jury charge, and whether the jury charge should have included an instruction that injury is not a necessary element of trespass. Accordingly, we reverse the court of appeals' judgment and remand to that court for further proceedings consistent with this opinion.

                                        _____

                                        Dale Wainwright
                                        Justice

OPINION DELIVERED: August 26, 2011